## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA )
)
v. ) Criminal No. 3:20-2
) Judge Stephanie L. Haines
ANDREW R. COLVIN )

## OPINION AND ORDER

Andrew R. Colvin ("Defendant") stands charged by indictment with possession with intent to distribute a quantity of marijuana, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(D) (Count One), and possession with intent to distribute one gram or more of LSD, and quantities of marijuana, cocaine, MDMA, ketamine, and THC, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B)(v), 841(b)(1)(C), 841(b)(1)(D) and 841(b)(1)(E) (Count Two).

Presently before the Court is Defendant's motion to suppress [Doc. 36] and the Government's response in opposition to that motion [Doc. 47]. A hearing on the motion was held on September 29, 2021, and a transcript of that hearing was filed on October 21, 2021 [Doc. 78]. Defendant filed a post-trial amended brief in support of the motion to suppress on November 19, 2021 [Doc. 79], and the Government filed a post-trial brief in opposition on November 22, 2021 [Doc. 80]. For the following reasons, Defendant's motion to suppress will be denied on all grounds.

I.     Factual Background

At the suppression hearing, the Government presented the testimony of FBI Special Agent James Simpson, the supervisor of the Southwest Pennsylvania Safe Streets Task Force ("SSTF"), and offered the video and audio recording of a traffic stop of a 2019 White Nissan Rogue operated

1

by Defendant on October 7, 2019.[1]   The testimony of Agent Simpson and the video and audio recording, which was admitted without objection at the hearing as Government Exhibit 1, establish the following:

In early October of 2019, a confidential source appeared at the FBI office in Johnstown and provided information regarding drugs coming into Johnstown from New York [Doc. 78 at 5]. The source indicated that an individual, whom he identified as Andrew Colvin, would be driving to Johnstown from New York in a white rental Nissan Rogue with a pallet full of marijuana [*Id.* at 6-7].   Agent Simpson provided the information to other task force officers, who passed it along to local law enforcement officers, including Officer Nick Scribe [*Id.* at 6-8].

On October 7, 2019, Cambria County Sheriff's Deputy Vince Arcurio sent a text message to other law enforcement officers relaying the information that Agent Simpson had received from the confidential source.[2]   The message indicated that Defendant would be coming to the Johnstown area from New York City, driving a rented white Nissan SVU, with a large amount of marijuana, coke, and Molly [*Id.* at 13].   The information also included Defendant's home address and the location of a storage unit he rented [*Id.*]   Later messages indicated that the confidential source had just talked to Defendant and reported that he would be home around 5:00 p.m., and that he would be picking up a friend, later determined to be Jeremy Beegle [*Id.*]   Around 5:04 p.m., Defendant was spotted in a white Nissan Rogue parked at Dollar General on Main Street in Johnstown [*Id.*].

---

[1]   The traffic stop of Defendant's vehicle was conducted by Officer Nick Scribe of the Johnstown Police Department, with several other local law enforcement officers arriving and participating after the initial stop.   Although Agent Simpson did not participate in the traffic stop, and Officer Scribe did not testify, Simpson reviewed the video with Scribe in advance of the hearing [Doc. 78 at 11].

[2]   The iMessage chain involving Arcurio and various other law enforcement officers was admitted without objection at the hearing as Government Exhibit 2.

At this time, Officer Scribe was in uniform in a marked Johnstown Police Department patrol car in downtown Johnstown. Officer Scribe's vehicle contained a dashboard camera that records video and, once the lights and siren are activated, also records audio [Doc. 78 at 8-9]. The recording of the traffic stop picks up with Scribe's patrol car approaching an intersection. Rain can be seen falling on the windshield of the patrol car and Officer Scribe's wipers can be seen moving intermittently. A white Nissan Rogue appears in the video traveling from right to left [*Id.* at 17]. The headlights of the vehicle are off [*Id.* at 17-18]. Agent Simpson acknowledged that you cannot see the windshield wipers moving in the video, but testified that Officer Scribe had indicated that he was able to see the windshield wipers moving before the vehicle came into view of the camera [*Id.*]. As a result, Officer Scribe decided to initiate a traffic stop for the violation of operating windshield wipers without headlights in the rain [*Id.* at 18]. Scribe activated his lights and sirens and began to follow the Rogue on Bedford Street until it prepared to make a right turn onto Vine Street [*Id.* at 18-19].[3] As Defendant was approaching the turn, a pedestrian stepped off the curb to cross the street. Defendant made the turn ahead of the pedestrian, causing the pedestrian to stop on the street [*Id.* at 19].

Officer Scribe initiated the stop near the intersection of Vine and Bedford Street and approached the vehicle [*Id.* at 20]. Scribe advised Defendant that he was stopped for running his wipers without headlights, as well as for a violation relating to the pedestrian in the crosswalk [*Id.* at 20-21]. Officer Scribe asked Defendant for his identification and confirmed that Defendant was

---

[3] Agent Simpson also testified that Defendant did not activate his turn signal over 100 feet before turning onto Vine Street, "which is another violation that Officer Scribe identifies later." [Doc. 78 at 18-19]. Defendant disputes that his signal was not activated more than 100 feet before making the turn, and the video is inconclusive as to how close to the intersection Defendant was before his signal came on. However, because the Court finds, for the reasons set forth in this opinion, that Officer Scribe otherwise had reasonable suspicion to conduct the stop, at what point in time Defendant activated his turn signal is not relevant.

operating a rental vehicle [*Id.* at 21].   Agent Simpson testified that at this point Officer Scribe indicated that he clearly could see a pallet that was wrapped in the back of the vehicle as the confidential source had described [*Id.*]  He also confirmed that the passenger in the vehicle was Jeremy Beegle [*Id.* at 22].

Officer Tyler Crooks of the Johnstown Police Department arrived on the scene and approached the vehicle on the passenger side [*Id.*].   Officer Scribe made reference to Officer Crooks of the smell of marijuana coming from the vehicle [*Id.*].   Officer Scribe returned to his patrol car and confirmed the identities of Defendant and Beegle [*Id.* at 23].   Scribe returned to the vehicle and asked Defendant if he had smoked marijuana and Defendant said no [*Id.* at 24].   Scribe indicated to Defendant that "your eyes are red" [*Id.*]  Believing that Defendant was under the influence of some substance, Officer Scribe asked for and received Defendant's consent to execute field sobriety tests [*Id.* at 24-25].

Defendant was led towards the front of the vehicle to conduct the field sobriety tests, at times not visible in the video recording and at other times partially obscured by the vehicle or by other officers.  From the audio recording, Officer Scribe can be heard indicating to Defendant that, looking at his eyes, he appeared to be under the influence of a substance [*Id.* at 26].  He asked Defendant if he was high, or nervous [*Id.*].  A walk-and-turn filed sobriety test was conducted [*Id.*].  Officer Scribe can be heard giving instructions and indicating that he would demonstrate the test for Defendant [*Id.* at 27].  At timestamp 7 minutes 12 seconds, Defendant appears in view of the camera, and, around timestamp 7 minutes 14 seconds, he clearly stumbled [*Id.*]  About eight seconds later, Defendant completed nine steps and began his turn, appearing on the video to be somewhat unsteady on his feet [*Id.* at 28].  Defendant indicated he did not know what he was supposed to be doing on the turn, so Officer Scribe repeated the instructions [*Id.*]  Around

4

timestamp 8 minutes 12 seconds, Defendant again appears unsteady as he re-starts the process for the walk-and-turn [*Id.* at 28-29].

Officer Scribe next described the second test, which was standing on one foot for approximately twenty seconds [*Id.* at 29]. Defendant is partially obscured in the video but appeared to Agent Simpson to be "fairly steady" [*Id.*]. However, at timestamp 9 minutes 24 seconds, Officer Scribe indicates that Defendant "messed up" the instructions that he gave Defendant for counting [*Id.*].

Officer Scribe then indicated to Defendant that he had observed some pens in the vehicle when he first approached it, and he asked Defendant for consent to smell them to determine if they were THC pens [*Id.* at 30]. No audible response from Defendant can be discerned from the recording, but Officer Scribe can be heard stating "go ahead," and Officer James Stevenson followed his instructions and got the pens [*Id.*].

Officer Scribe next is heard saying to Defendant "you don't seem impaired, but you're all over the place" [*Id.* at 31]. He then asked Defendant for consent to search the vehicle, to which Defendant responded "there's nothing in there" [*Id.*]. Interpreting Defendant's statement as consent, Officer Scribe opened the rear door on the driver's side, at which point Defendant clearly objects [*Id.* at 32]. Scribe then closed the door and asked Officer Donald Hess of the Upper Yoder Police Department to arrest Defendant, and Hess then handcuffed him around time stamp 10 minutes 50 seconds [*Id.* at 33, 35]. In a background conversation, Officer Scribe can be heard confirming with Officer Stevenson that he also smelled weed in the vehicle [*Id.* at 33].

Around timestamp 12 minutes 6 seconds, Officer Hess indicated that Defendant was under arrest for DUI [*Id.* at 35]. Shortly thereafter, Officer Stevenson can be observed holding a pill bottle he retrieved from the driver's side door [*Id.* at 35-36]. Officer Scribe then can be heard

talking to Beegle, repeating that he and other officers had smelled marijuana coming from the vehicle, and Beegle confirmed that he had smoked weed prior to getting in the vehicle [*Id.* at 36]. About a minute later, in a conversation between Officer Scribe and Officer Stevenson, who was inside the Nissan Rogue on the front driver's side, it is indicated that what the officers believed to be powder cocaine was observed while opening Defendant's wallet to retrieve his driver's license for purposes of drug testing at the hospital [*Id.* at 36-37].

After the vehicle was towed, a search warrant for the vehicle was obtained and executed the following day on October 8, 2019 [Doc. 47-1]. The search revealed 60 pounds of marijuana in the package in the back of the Nissan Rogue [Doc. 78 at 38]. On October 9, 2019, a criminal complaint was filed against Defendant charging him with various controlled substances offenses, driving under the influence of a controlled substance, and two traffic violations, one for driving without headlights while using windshield wipers and one for careless driving with regard to the pedestrian.[4] An arrest warrant was issued and effected on October 9, 2019, by SSTF members, including Detective Brent Hinterliter, at Defendant's residence on Vickroy Avenue. After taking Defendant into custody, Detective Hinterliter advised him of his *Miranda* rights [Doc. 78 at 39]. In response to questioning, Defendant stated that a gun would be found upstairs in his residence, and admitted that the marijuana found in the Nissan Rogue came from "out east" [*Id.* at 40].

As a result of the overall investigation, including the traffic stop of the Nissan Rogue, search warrants also were sought, issued and executed for a storage unit rented by Defendant on October 9, 2019 [Doc. 47-2] and Defendant's cellular telephone on October 27, 2019 [Doc. 47-3].

---

[4] The criminal complaint was admitted without objection at the hearing as Government Exhibit 3.

## II.    Analysis

Defendant seeks suppression of all evidence and statements relating to, and resulting from, the traffic stop and his arrest on October 7, 2019; the execution of the three search warrants on his vehicle, storage unit, and cell phone on October 8, 9, and 27, 2019, respectively; and, his arrest on October 9, 2021.   Defendant raises numerous grounds for suppression: (1) lack of reasonable suspicion for the traffic stop; (2) unreasonable extension of the traffic stop; (3) lack of probable cause for the warrantless search of Defendant's vehicle during the traffic stop; (4) lack of *Miranda* warnings prior to obtaining statements from Defendant through custodial interrogation; and, (5) lack of probable cause for his warrantless arrest for DUI on October 7, 2019.

The Court will address each of these issues in turn.

### A.    Terry-stop

The first issue before the Court is whether Officer Scribe had reasonable suspicion of a traffic violation to justify the initial stop.   Clearly, the answer is yes.

Traffic stops are classified as a type of *Terry*-stop, *see Terry v. Ohio*, 392 U.S. 1 (1968), and may be initiated based on a reasonable suspicion that a traffic violation has occurred. *Navarette v. California*, 572 U.S. 393 (2014); *United States v. Delfin-Colina*, 464 F.3d 392, 396–97 (3d Cir. 2006) (adopting reasonable suspicion, not probable cause, as the applicable standard for traffic stops).   A traffic stop is deemed reasonable when an objective review of the record "shows that an officer possessed specific, articulable facts that an individual was violating a traffic law at the time of the stop." *Delfin–Colina*, 464 F.3d at 398.   Importantly, "reasonable suspicion is based on the totality of the circumstances, *i.e.*, 'the whole picture.'"   *United States v. Green*, 897 F.3d 173, 184 (3d Cir. 2018) (quoting *United States v. Cortez*, 449 U.S. 411, 417 (1981)).

An officer's Fourth Amendment burden of production in justifying a traffic stop is to: (1) identify the ordinance or statute that he believed had been violated; and, (2) provide specific, articulable facts that support an objective determination of whether any officer could have possessed reasonable suspicion of the alleged infraction based upon those facts. *Delfin-Colina*, 464 F.3d at 399.

Here, at the time of the stop, Officer Scribe identified two separate traffic laws that he believed Defendant had violated. First, Officer Scribe saw that Defendant's headlights were not on, and, according to Agent Simpson's testimony, Scribe further observed that the windshield wipers were moving. The video shows that rain was falling at the time. As a result, Officer Scribe decided to initiate a traffic stop for the violation of operating windshield wipers without headlights in violation of 75 Pa.C.S.A. § 4302(a)(3).[5] After Officer Scribe activated his lights and siren but before Defendant pulled over, Officer Scribe identified a second traffic violation committed as Defendant turned right onto Vine Street. Officer Scribe observed a pedestrian at the intersection step off the curb to begin to cross Vine Street, and saw Defendant make the turn ahead of him, causing the pedestrian to stop on the street. As a result, Officer Scribe believed Defendant failed to yield the right-of-way to a pedestrian in a crosswalk in violation of 75 Pa.C.S.A. § 3542(a).[6]

---

[5] The Pennsylvania Motor Vehicle Code provides in pertinent part: "The operator of a vehicle upon a highway shall display the lighted head lamps and other lamps and illuminating devices required under this chapter for different classes of vehicles, subject to exceptions with respect to parked vehicles, at the following times: . . . Any time when the vehicle's windshield wipers are in continuous or intermittent use due to precipitation or atmospheric moisture, including rain, snow, sleet or mist." 75 Pa.C.S.A. § 4302(a)(3).

[6] The Pennsylvania Motor Vehicle Code provides in pertinent part: "When traffic-control signals are not in place or not in operation, the driver of a vehicle shall yield the right-of-way to a pedestrian crossing the roadway within any marked crosswalk or within any unmarked crosswalk at an intersection." 75 Pa.C.S.A. § 3542(a).

An objective review of the facts in this case establishes that Officer Scribe had a reasonable suspicion to believe that Defendant violated both traffic laws, either of which is sufficient to serve as a legitimate basis for making the stop. As to the first violation, it is undisputed that Defendant did not have his headlights on, and that it was raining, and both of these facts are confirmed by the dashcam video recording. Defendant's only dispute is with Officer Scribe's belief that his windshield wipers were moving. Defendant's position that they were not moving is reliant exclusively on the video recording, which did not appear to show any movement of the wipers once Officer Scribe began to follow Defendant's vehicle.[7] However, according to Agent Simpson's testimony, Scribe observed the wipers moving while his patrol car was approaching the intersection, with Defendant's vehicle coming from his right [Doc. 78 at 17-18]. The dashboard camera was facing forward, and it is not unreasonable to conclude that Officer Scribe turned his head to the right and believed he saw the wipers moving before Defendant's vehicle passed directly in front of the patrol car and first became visible on the camera.

In any event, once Officer Scribe saw Defendant operating the vehicle with the wipers moving, without headlights, in the rain, he had a reasonable suspicion of the alleged infraction sufficient to justify the stop, and this is so even if, in fact, the wipers were not moving intermittently. It is well-settled that an officer need not be factually accurate in his belief that a traffic law has been violated, but need only produce facts establishing that he *reasonably believed* that a violation had taken place. *Delfin–Colina*, 464 F.3d at 398. Consequently, a reasonable mistake of fact ""does not violate the Fourth Amendment."" *Id.* (quotation omitted); *see also Illinois v. Rodriguez*, 497 U.S. 177, 185 (1990) (noting that factual determinations made by government agents need not "always be correct," but they always have to be "reasonable"). Here,

---

[7] It simply is not possible to determine from the video recording whether or not Defendant's wipers were activated, as the rear window of the Nissan is too dark to see through up to the front windshield.

Agent Simpson's testimony that Officer Scribe saw the wipers moving prior to Defendant's vehicle coming into view of the camera is sufficient to establish that, at the time of the stop, Scribe reasonably suspected that Defendant was operating the vehicle in violation of § 4302(a)(3), justifying the traffic stop, whether or not the statute actually had been violated.

Similarly unavailing is Defendant's argument that Officer Scribe lacked reasonable suspicion of the violation relating to the failure to yield the right-of-way to a pedestrian. Defendant disputes that the pedestrian was in the marked crosswalk, instead contending that he was outside the crosswalk and was jaywalking. From the video recording, it appears that the pedestrian may have been slightly outside the crosswalk, although his left foot was very close to the white line of that crosswalk. What is very clear from the video, however, is that the pedestrian had stepped off the curb onto the street near the intersection when he had to stop to let Defendant pass.

Again, though, whether or not the pedestrian was inside a marked crosswalk, or just outside of it, is not the issue – the issue is whether the officer *reasonably believed* that Defendant violated the statute by failing to yield the right of way. The objective facts here establish that Officer Scribe's belief was reasonable. Officer Scribe was operating a patrol car and following Defendant's vehicle when he observed a pedestrian near the intersection step off the curb and stop on the street as Defendant approached. From Officer Scribe's vantage point, it would have been difficult to determine with absolute certainty whether the pedestrian had one foot within the crosswalk or both outside of it. What he was able to observe was the pedestrian abruptly stop while attempting to cross the street at an intersection because Defendant made a right turn directly in front of him. The Court is satisfied that the specific, articulable facts observable to him were sufficient to create a reasonable suspicion that Defendant failed to yield the right of way to a pedestrian, whether or not the statute in fact was violated.

Upon an objective review of the totality of the circumstances surrounding the initial traffic stop, the Court finds that Officer Scribe possessed a reasonable suspicion that Defendant had violated at least two separate traffic laws at the time of the stop, sufficient to justify a traffic stop for either violation.

**B.     Prolongation of traffic stop**

Defendant next argues that even if Officer Scribe had a reasonable suspicion of a traffic violation justifying the initial stop, the officers unlawfully prolonged that stop in order to investigate other crimes that were not related to the underlying traffic violation.   Defendant contends that, even if the field sobriety tests are deemed to be within the scope of the initial stop, anything that occurred following the completion of those tests constituted an unlawful extension of the stop in order to investigate unrelated crimes.  However, based on the facts as they developed during the duration of the stop, the Court finds that the officers had more than a reasonable suspicion to continue to extend the stop beyond the violations that initiated it.

The United States Supreme Court has held that a traffic stop that is lawful at its inception "can become unlawful if it is prolonged beyond the time reasonably required to complete th[e] mission" of issuing a ticket. *Illinois v. Caballes*, 543 U.S. 405, 407 (2005).  In *Rodriguez v. United States*, 575 U.S. 348, 355 (2015), the Court explained that while an officer "may conduct certain unrelated checks during an otherwise lawful traffic stop . . . he may not do so in a way that prolongs the stop, absent the reasonable suspicion ordinarily demanded to justify detaining an individual." Thus, an unreasonable extension occurs when an officer, without reasonable suspicion, diverts from a stop's traffic-based purpose to investigate other crimes. *Rodriguez*, 575 U.S. at 354-55; *see also United States v. Green*, 897 F.3d 173, 179 (3d Cir. 2018).

Reasonable suspicion is based on the totality of the circumstances, *i.e.*, "the whole picture." *Green*, 897 F.3d at 184 (citing *United States v. Cortez*, 449 U.S. 411, 417 (1981)).  Moreover, "[i]t is well settled that the smell of marijuana alone . . . may establish not merely reasonable suspicion, but probable cause." *United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006); *Green*, 897 F.3d at 186.  Indeed, the odor of marijuana in a car can "'be evidence of the most persuasive character,' . . . and is not an attribute shared by 'a very large category of presumably innocent travelers.'" *Green*, 897 F.3d at 186 (internal citations omitted).

In this case, from the moment the officers first approached the vehicle, reasonable suspicion developed to extend the stop beyond the traffic violations that initiated it.  The record shows that as soon as Officer Scribe arrived at the vehicle to ask for Defendant's identification, he smelled marijuana and noticed that Defendant's eyes were red, providing reasonable suspicion to conduct the field sobriety tests to determine if Defendant was driving under the influence. Likewise, the smell of marijuana provided reasonable suspicion for law enforcement to smell the pens that Officer Scribe had observed when he first approached the vehicle in order to determine whether they were THC pens.

Because the facts available to Officer Scribe at the time were sufficient to establish reasonable suspicion either that Defendant was operating the vehicle under the influence of marijuana, or that there may have been THC pens in the vehicle, or both, the Court finds that there was no unlawful extension of the initially valid traffic stop.

## C.     Warrantless Search of Vehicle

Defendant next challenges the warrantless search of his rental vehicle at the site of the traffic stop.[8]  He alleges that the search of the vehicle, including the smelling of the pens and the

---

[8] As an initial matter, the Court finds that the warrantless search of the vehicle at the site of the traffic stop was not consensual.  The video from the stop shows that Officer Scribe asked Defendant for

search of a pill bottle located within the vehicle, lacked probable cause, and therefore cannot be justified under either the automobile exception or the plain view exception to the warrant requirement.  Because the Court finds that law enforcement had probable cause to believe that the vehicle contained contraband, any warrantless search of the vehicle and its contents, including the pens and the pill bottle located inside, was reasonable and constitutional.

### 1.    Automobile Exception

The United States Supreme Court long has recognized that the search of an automobile can be reasonable without a warrant. *Collins v. Virginia*, 584 U.S. ___, 138 S.Ct. 1663, 1669 (2018) (citing *Carroll v. United States*, 267 U.S. 132 (1925)).  The so-called "automobile exception" permits vehicle searches without a warrant if there is "probable cause to believe that the vehicle contains evidence of a crime." *United States v. Donahue*, 764 F.3d 293, 299–300 (3d Cir. 2014). Moreover, "[i]f probable cause justifies the search . . . it justifies the search of every part of the vehicle and its contents that may conceal the object of the search." *United States v. Ross*, 456 U.S. 798, 825 (1982).  The Government bears the burden of establishing the applicability of the exception by a preponderance of the evidence. *Donahue*, 764 F.3d at 300.

Probable cause exists if, based on the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983).  The probable cause inquiry is "commonsense," "practical," and "nontechnical;" it is based on the totality of the circumstances and is judged by the standard of "reasonable and prudent men." *Id.* at 230–31.  The Court must evaluate "the events which occurred leading up to the . . . search, and then . . . [decide] whether these historical facts, viewed from the

---

consent to search, to which Defendant replied, "there's nothing in there" [Doc. 78 p. 31].  Although Officer Scribe somehow initially interpreted this response as consent, as soon as he opened the rear door of the vehicle, Defendant immediately objected, which Scribe then construed as a "revocation" of consent [*Id.* at 32-33].  The Government does not rely on consent to justify the search, and does not need to.

standpoint of an objectively reasonable police officer, amount to . . . probable cause." *Ornelas v. United States*, 517 U.S. 690, 696 (1996).

Here, under the totality of the circumstances, the officers had more than sufficient probable cause to believe that evidence of a crime would be found in Defendant's vehicle. Upon observing the traffic violations and initiating the stop shortly after 5:00 p.m., the officers identified Defendant as the driver and Jeremy Beegle as his passenger, and confirmed that the Nissan Rogue was a rental. The officers already were aware at that time of the information that had been received from the confidential informant, who had advised that Defendant would be traveling from New York to Johnstown with a pallet of marijuana, as well as cocaine and ecstasy, in a white rental Nissan Rogue, and that he would be arriving around 5:00 and would be picking up a friend identified as Jeremy Beegle. Officer Scribe also observed a large pallet in the vehicle when he asked Defendant for his identification.

The historical facts known to, and confirmed by, law enforcement that led up to the search clearly were sufficient for an objectively reasonable officer to conclude that there was a fair probability that evidence of a crime or contraband would be found in the vehicle. In addition to those historical facts, the officers immediately detected a strong odor of marijuana from the outset of the stop, and Beegle confirmed that he had been smoking marijuana. As noted, the smell of marijuana alone may establish probable cause. *Ramos*, 443 F.3d at 308. Here, the odor of marijuana, in conjunction with the other observations of the officers corroborating the information provided by the confidential informant, only adds to the strong foundation of probable cause justifying the warrantless search of the vehicle in this case.

Having had probable cause to search the vehicle, the officers also had probable cause to search every part of that vehicle and its contents that may have concealed the object of the search,

*Ross*, 456 U.S. at 825, including the pill bottle, which could have contained ecstasy, as well as the pens to determine if they were THC pens. *See also Arizona v. Gant*, 556 U.S. 332, 347 (2009) (if there is probable cause to believe a vehicle contains evidence of criminal activity, a search of any area of the vehicle in which such evidence might be found is authorized).

Based on the totality of the circumstances, the Court is satisfied that the officers had probable cause to believe that the vehicle contained contraband or evidence of a crime, justifying a warrantless search of the vehicle, and its contents, under the automobile exception to the warrant requirement.

### 2.      Plain View Exception

With respect to the THC pens, Defendant also argues that the search, *i.e.*, the smelling, of the pens was not justified under the plain view exception to the warrant requirement.  This argument also lacks merit.  As already found, the strong odor of marijuana emanating from the vehicle was sufficient to establish both reasonable suspicion to justify the smelling of the pens, as well as probable cause to trigger the automobile exception.

Further, the THC pens were in plain view.  It is well-settled that law enforcement officers are permitted to seize incriminating evidence in plain view during the course of a lawful search. *Horton v. California*, 496 U.S. 128, 141 (1990).  The United States Supreme Court has identified three requirements for a valid plain view seizure.  First, the officer must not have violated the Fourth Amendment in "arriving at the place from which the evidence could be plainly viewed." *Horton*, 496 U.S. at 136.   Second, the incriminating character of the evidence must be "immediately apparent."  *Id*.  Third, the officer must have "a lawful right of access to the object itself."  *Id*.; *see also United States v. Telfair*, 507 F. App'x 164, 172 (3d Cir. 2012).  All three of these requirements are met in this case.  As already determined, the officers lawfully initiated the

traffic stop, the incriminating nature of the pens was readily apparent in light of the strong odor of marijuana emanating from the vehicle, and the officers likewise had a lawful right to access the pens under the automobile exception.  Moreover, the Supreme Court has suggested that if the plain view doctrine supports seizure of an item, it also supports a search of the item.  *Arizona v. Hicks*, 480 U.S. 321, 326 (1987).  Accordingly, the plain view doctrine provides further justification for the seizure and search of the THC pens in this case.

    **D.**    **Statements**

    Next, Defendant seeks suppression of any and all incriminating statements he made to officers on October 7, 2022, and on October 9, 2022.  Defendant contends that on both occasions statements were elicited from him under custodial interrogation prior to the administering of *Miranda* warnings.

    It is axiomatic that before police can initiate custodial interrogation, they must advise the defendant of certain rights, including the right to remain silent and the right to counsel.  *Miranda v. Arizona*, 384 U.S. 436, 468–470 (1966).  However, *Miranda* warnings are required only when a suspect is both in custody and subject to interrogation.  *Alston v. Redman*, 34 F.3d 1237, 1246–47 (3d Cir.1994).  A person is "in custody" when he either is arrested formally or his freedom of movement is restricted to "the degree associated with a formal arrest."  *United States v. Willaman*, 437 F.3d 354, 359 (3d Cir. 2006).  Interrogation means "express questioning or its functional equivalent . . . any words or actions on the part of police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect."  *United States v. Brownlee*, 454 F.3d 131, 146 (3d Cir. 2006) (quoting *Rhode Island v. Innis*, 446 U.S. 291, 300–01 (1980)).

Here, as to any statements made on October 7, Defendant contends that he was not given his *Miranda* rights until approximately eight or nine minutes after he was handcuffed and taken into custody at the site of the traffic stop, and thus any statements that he made prior to his arrest, and in the period between being taken into custody and the *Miranda* warnings, should be suppressed. Initially, any statements that Defendant made prior to being handcuffed and arrested are not subject to *Miranda*, because any such statements were made during the course of a lawful traffic stop. In *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984), the United States Supreme Court held that persons temporarily detained pursuant to an ordinary traffic stop are not "in custody" for purposes of *Miranda*. Here, Defendant was detained pursuant to such a stop, and there is nothing apparent on the video and audio recording which would indicate that he was "in custody" for *Miranda* purposes at any point prior to his being placed in handcuffs.[9] *Id.* at 441-42. Accordingly, any statements that Defendant may have made during the course of the stop until he was handcuffed and taken into custody are not inadmissible for failure to adhere to *Miranda*.

The Court also finds no basis to suppress any statements Defendant made between the handcuffing of Defendant by Officer Hess and the administering of *Miranda* warnings by Officer Scribe. The video of the traffic stop shows that Defendant was handcuffed after he objected to the search of the vehicle. This occurred around time stamp 10 minutes and 50 seconds, and at this point he clearly was "in custody" within the meaning of *Miranda*. What ensued next was an approximately one minute argument between Defendant and Officer Scribe as to whether

---

[9] The Supreme Court in *Berkemer* determined that asking a defendant to perform a field sobriety balancing test during a routine traffic stop is not the functional equivalent of a formal arrest. *Berkemer*, 468 U.S. at 442. In this case, the time that elapsed from the completion of the field sobriety tests and Defendant's arrest was minimal, and in that short time there is nothing on the video to indicate that Defendant's freedom of action was curtailed "to a degree associated with formal arrest," *see California v. Beheler*, 463 U.S. 1121, 1125 (1983), which would have rendered him "in custody" for *Miranda* purposes, until he was in fact handcuffed and placed under arrest.

Defendant actually had consented to search the vehicle. Around time stamp 12 minutes 6 seconds, Defendant was advised that he was under arrest and he was led out of view of the camera and placed into the back of a patrol car. After that, the officers can be heard talking to Beegle, but nothing else occurred with Defendant until around time stamp 18 minutes 56 seconds, when Officer Scribe opened the back door and began talking to him. The audio recording depicts Officer Scribe asking Defendant his name and if anything would be found in his blood when he is taken for a blood test. Defendant indicated that he had a prescription for oxycontin, but that he had not taken any that day and that he "doesn't drive impaired." At around time stamp 19 minutes 58 seconds, Defendant is advised by Officer Scribe that he is under arrest for suspected DUI and at that point he is administered his *Miranda* warnings.

The Court sees no grounds for suppressing any statements Defendant made in the interval between being taken into custody and the administering of *Miranda* warnings. In the minute immediately following being placed into handcuffs, Defendant made no incriminating statements, but merely argued with Officer Scribe as to whether he gave consent to search the vehicle. He then was placed alone in the back of a patrol car. When Officer Scribe began talking with him in the back of the patrol car, Defendant again gave no incriminating statements in response to Scribe's questions, as to his name and if he had anything in his blood, prior to being advised of his *Miranda* rights. As Defendant made no incriminating statements in response to custodial interrogation during the relevant time period, there are no statements to suppress.[10]

---

[10] Officer Scribe should not have asked Defendant if there was anything in his blood after Defendant was arrested but prior to administering *Miranda* warnings. Had Defendant given an incriminating answer to this question, such as admitting to having smoked marijuana or otherwise admitting he was under the influence of another substance, such a response to that question would be inadmissible. The Court does not view his answer that he had a prescription for Oxycodone to be incriminating, however, particularly when Defendant indicated that he had not taken any that day and that he was not driving impaired. The Court views this statement as essentially irrelevant to anything that subsequently transpired or is at issue in this case.

Defendant also seeks suppression of any statements he made to law enforcement on October 9, 2019, when officers came to his home to execute an arrest warrant. In his initial motion to suppress, Defendant alleged that, after the officers arrested him and prior to advising him of his *Miranda* rights, he was subjected to questioning that elicited a statement that he had a gun in his residence [Doc. 36 ¶ 42]. At the hearing, however, Agent Simpson testified that Defendant's statement regarding the gun in the residence, as well as a statement that the marijuana in the vehicle came from "out east," were made *after* Detective Hinterliter advised Defendant of his Miranda rights [Doc. 78 pp. 39-40]. Although Agent Simpson indicated that Defendant may have made some statements to Officer Hess prior to being advised of his rights by Detective Hinterliter, there is nothing in the record to contradict the testimony that the statements regarding the gun and the marijuana were made to Detective Hinterliter after Defendant was given his *Miranda* warnings, and Defendant made no argument to the contrary in his post-hearing brief [Doc. 79]. Accordingly, the Court finds no basis to suppress any statements that Defendant made on October 9, 2019, regarding a gun in his residence or regarding where the marijuana found in the vehicle originated.

## E. Probable Cause to Arrest

Finally, Defendant argues that the police lacked probable cause to arrest him for driving under the influence, or any other crime, during the traffic stop on October 7. This argument is wholly without merit.

Probable cause to arrest exists whenever reasonably trustworthy information or circumstances within an arresting officer's knowledge are sufficient to warrant a person of reasonable caution to conclude that an offense has been or is being committed by the person being arrested. *United States v. Laville*, 480 F.3d 187, 194 (3d Cir. 2007). The arresting officer need not have contemplated the specific offense for which the defendant ultimately will be charged.

The appropriate inquiry, rather, is whether the facts and circumstances within the officer's knowledge at the time of an investigative stop or arrest objectively justify that action. *Id.* at 194 (citing *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).

Here, there was more than sufficient information by which a reasonable officer could have concluded that Defendant had committed or was committing an offense. Officer Scribe immediately smelled marijuana emanating from the vehicle, and observed that Defendant's eyes were red and that he appeared to be under the influence of some substance. During the walk-and-turn field sobriety test, Defendant clearly stumbled at one point, Officer Scribe believed Defendant to be unsteady on his feet as he began the turn, and Scribe then had to repeat the instructions to him. During the second test, Officer Scribe indicated that Defendant also "messed up" the instructions that he gave Defendant for counting. Based on the totality of the circumstances, including the odor of marijuana, Defendant's red eyes, and his performance on the field sobriety tests, the Court is satisfied that the facts within Officer Scribe's knowledge were sufficient to support a reasonable belief that Defendant was driving under the influence of marijuana or some other substance, justifying his warrantless arrest on October 7.

**F.    Search Warrants**

Defendant also seeks suppression of all evidence seized from the execution of the three search warrants issued for the vehicle [Doc. 47-1], Defendant's rented storage unit [Doc. 47-2], and his cell phone [Doc. 47-3]. Defendant does not specifically attack the warrants themselves or the supporting affidavits, or argue that the warrants are not supported by probable cause. Instead, Defendant merely argues that the warrants were supported and issued based wholly on information obtained through the allegedly unlawful traffic stop and the allegedly unconstitutional warrantless search of his vehicle and its contents, and therefore, any evidence seized pursuant to those warrants

should be suppressed as "fruit of the poisonous tree." *See Wong Sun v. United States*, 371 U.S. 471 (1963).

As the Court has found no constitutional violation related to the traffic stop or to the warrantless search of Defendant's vehicle and its contents, any evidence seized or information gleaned from the stop and the warrantless search was lawfully obtained, and there is no basis to suppress any evidence seized from the execution of the three search warrants to the extent they were issued based on any such evidence or information, and no further analysis is needed on this issue.

## III.   Conclusion

For the foregoing reasons, the Court finds no grounds for suppression of any physical evidence or statements in this case.  The initial traffic stop was based on reasonable suspicion that two separate traffic violations were committed, and to the extent it was prolonged, it was extended based on additional reasonable suspicion as it developed during the stop.

Further, law enforcement had probable cause to conduct a warrantless search of the vehicle and its contents under the automobile exception and had additional justification to seize and search the THC pens under the plain view doctrine.  The officers also had probable cause to arrest Defendant based on a reasonable belief that he was driving under the influence of marijuana.

Finally, no incriminating statements were elicited from Defendant in violation of *Miranda*. On October 7, Defendant was not in custody until he was handcuffed, and any statements he gave prior to that event are not subject to *Miranda*.  To the extent Defendant made any statement in the interval between when he was taken into custody and when *Miranda* warnings were administered, such statements were not incriminating.  As to his statements on October 9, any incriminating statement made by Defendant on that date was given after he was *Mirandized*.

21

Finding no constitutional violation on any ground, Defendant's motion to suppress will be denied.  An appropriate order will follow.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA        )
                                )
            v.                  )     Criminal No. 3:20-2
                                )     Judge Stephanie L. Haines
ANDREW R. COLVIN                )

## ORDER

AND NOW, this 4th day of March, 2022, upon due consideration of Defendant's motion to

suppress [Doc. 36], the Government's response in opposition thereto [Doc. 47], Defendant's post-

trial brief in support [Doc. 79] and the Government's post-trial brief in opposition [Doc. 80], and,

for the reasons set forth in the accompanying Opinion, IT IS ORDERED that Defendant's motion

to suppress [Doc. 36] hereby is **denied**.


                                        _____
                                        Stephanie L. Haines
                                        United States District Judge


cc/ecf:  All counsel of record